GRACEY, JUDGE:
Both claimants are Went Virginia corporations, of Welch, in McDowell County, and have a common ownership. Yeager, Incorporated owns certain real estate there which it leases to Yeager Ford Sales, Inc., a Ford dealership. Except for a sales building on the other side of McDowell County Route 7, the real estate in situated between the highway and the Tug River, over many years, occasional hard rains had caused a flooding of the highway,, about 8 to 10 times each year. The storm sever drain was inadequate. The only available bypass street, Central Avenue, is too narrow for two-way traffic, on these flooding occasions, authorities would contact Yeager Ford Sales, Inc. which would favor the public by moving care from its lot, allowing vehicles to then use its lot an a bypass route. After such a hard rain and flooding in June of 1981, renewed complaints resulted in an effort of the respondent to solve the problem. Emily W. Yeager, an officer of both corporations and wife of the principal owner, Earl Yeager, headed up the effort, addressing requests to members of the legislature and respondent's representatives in the area. It was agreed that a drain would be installed between the highway and the Tug River, passing beneath two buildings on the Yeager, Incorporated property, referred to as the parts building and the annex. Except for surveying the elevations and route,, and determining that a 24-inch drain pipe would be installed, there appears to have been little in the way of planning the construction. There were no formal plans.
Before the work was begun, a right of way instrument was prepared by respondent for execution by Earl Yeager as president of Yeager, Incorporated. This instrument contained language to the affect that the consideration for the right of way was also consideration for a release ". . . from any and all damages that have been occasioned or that may be occasioned to the residue of the property ... by
reason of the construction to be performed." After Yeager's refusal to sign, respondent added to the instrument:
'It in agreed that after the pipe in installed the property will be restored to as near original condition as possible.'
The instrument was then signed and respondent, with its own men, proceeded to install the 24-inch drain during August of 1981.
Respondent apparently had expected labor help from the City of Welch for hand digging the trench, for the drain, and the buildings. When such labor help was not provided, respondent used mechanical equipment, a borrowed Bobcat loader. Instead of a narrow trench, the excavation in places was about twelve feet in width and was some six to eight feet in depth and was also along the wall of an adjacent building known an the truck garage. From the evidence, the Court is satisfied that the respondent road portions of building footers and installed wood cribbing as a permanent replacement for foundation wall support; that respondent *32 cut through the cement floor of the annex, for access underneath, and did not properly backfill nor replace the floor; that respondent's work resulted in now cracks and enlargement of cracks existing prior to construction, and other damages to the buildings and rendered portions of the buildings unsafe or unfit for use. Respondent denied any obligation to do anything further, after completing construction of the drain, except respondent did replace some fencing and did supply two truckloads of backfill material for filling the hole in the floor of the annex.
It is respondent's position that the claimants were aware that some building damage might ultimately result from construction of the drain; that Earl Yeager's original attitude had been that getting the now drain in was so necessary that he did not care about building damage. Respondent mad* no preconstruction investigation of the soil conditions beneath the buildings and later found the soil to be sand containing a lot of water. As one of respondent's witnesses stated, "Hindsight in better than foresight." Thomas 0. Henderson, Jr., then respondent's county supervisor for me 11 County, did not know of the added provision in the right of way agreement, the provision to the effect that the property was to be restored to an near original condition as possible. He supervised the construction under direction of William R. Bennett, respondent's engineer.
Bennett did know of the added provision and was present daily during construction, but he, too, thought that Earl Yeager did not care if there was some settlement of the buildings. No stated that Yeager had given approval to cutting the hole in the annex floor and that he, Yeager, "... would see that it got put back in." He conceded that the annex building was not restored as nearly as possible to its original condition. He contended that use of the wood cribbing constituted good engineering practice.
There was disagreement, between claimants' and respondent's witnesses, whether treated wood had been used. Claimants' witnesses contended that untreated wood was used. Respondent's witnesses assumed that treated wood was used for the reason that it purchases only treated lumber.
Hearing of this case was bifurcated upon the issues of liability and damages. Upon the issue of liability, the Court finds that the written right of way agreed to in the only contract between the partien; that the claimants' interpretation of the contract in correct, that it was the obligation of the respondent, upon accepting the right of way instrument it had prepared and signed and upon then constructing the drain, to restore the property, including the buildings, to as near original (preconstruction) condition as possible,
The Clerk of the Court is directed to sat this case for further hearing, upon the issue of damages.